## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAIME N. GABRIEL**<br>**Plaintiff** | **CIVIL ACTION NO.:** |
| **-VS-** | **JUDGE:** |
| **SMILE COMMUNITY ACTION**<br>**AGENCY, INC. and CHRISTOPHER**<br>**WILLIAMS**<br>**Defendants** | **MAGISTRATE JUDGE** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW INTO COURT through undersigned counsel comes Plaintiff, Jaime N. Gabriel ("Plaintiff"), and files this complaint against Defendants, St. Martin, Iberia, Lafayette Community Action Agency (hereinafter "SMILE" or "Defendant") and Christopher Williams (hereinafter "Williams" and "Defendant"), (collectively "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, Louisiana Employment Discrimination Law ("LEDL") LSA- R.S. § 23: 301 *et seq.* the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (FMLA), and the Americans with Disabilities Act ("ADA") under 42 U.S.C. § 12112(a) and (b)(4).

## JURISDICTION

1. This Honorable Court has subject matter jurisdiction over this matter because federal questions arise under 28 U.S.C. §§ 1331, 1343 and 29 U.S.C. §§ 216(b), 217 and 2617 and because this action involves a federal question under Title VII and the FMLA. Furthermore, 42 U.S.C. § 1981, relative to the Civil Rights Act of 1866, and Title VII of the Civil Rights Act of 1964, as

amended (42 U.S.C. § 2000e, *et seq.*), also establish the subject matter jurisdiction of this Honorable Court.

2.   This Honorable Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claim shares all common operative facts with the federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

3.   This Honorable Court has personal jurisdiction over defendant, SMILE, because it is a Louisiana nonprofit corporation with its principle place of business is located at 501 St. John Street, Lafayette, Louisiana 70502.

4.   This Honorable Court has personal jurisdiction over defendant, Christopher Williams as a person over the age of majority who is domiciled and resides in the State of Louisiana.

## VENUE

5.   Venue is proper in the United States District Court, Western District of Louisiana under 42 U.S.C. § 2000e(5)(f)(3)  and 28 U.S.C. §1392(b)(1) and (2), the Defendants' principal place of business is in this District and the events or omissions giving rise to the claims occurred in this District and because the events or omissions giving rise to the claims described herein occurred in Lafayette, Louisiana. Furthermore, venue is proper int his district under 28 U.S.C. § 1391 (a)(1), (b)(1) because all parties including the defendants, reside within the district.

**PARTIES**

6.   At all times material hereto, Gabriel was, and continues to be an adult resident of Lafayette, Louisiana. At all material times, she was an "eligible employee" under 29 U.S.C. § 2611(2).

7.   At all times material hereto, Defendant St. Martin, Iberia, Lafayette Community Action Agency, Inc. (hereinafter "SMILE") was, and continues to be, a Louisiana nonprofit corporation. SMILE's principle place of business is located at 501 St. John Street, Lafayette, Louisiana 70501.  SMILE was the employer of Gabriel within the meaning of 29 U.S.C. § 2611(4) at all times relevant to this action and upon information and belief Defendant employs more than 75 persons.

8.   Defendant SMILE has at all times relevant hereto, maintained an employment relationship with fifteen (15) or more individuals, and are "employer(s)" within the meaning of applicable federal, state and local laws.

9.   At all times relevant to this complaint, Gabriel's immediate supervisor, Christopher Williams, served as the Chief Executive Officer for SMILE and as Gabriel's immediate supervisor with Defendant SMILE, and as such was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of Gabriel's employment with Defendant SMILE.

**ADMINISTRATIVE PROCEDURE**

10.   On October 18, 2018, Gabriel filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") asserting her claims for employment

discrimination, harassment and retaliation in violation of Title VII. A true and correct copy of the

EEOC charge is attached hereto as **Exhibit A**.

11.   On November 13, 2018, the EEOC issued a notice of right to sue.  A true and correct

copy of the EEOC determination is attached hereto as **Exhibit B**.

12.   This action has been commenced within ninety (90) days of receipt of the Notice of

Right to Sue.

## FACTUAL ALLEGATIONS

13.   Gabriel was hired by SMILE as a temporary secretary on August 11, 2011.

14.   Gabriel was promoted to a full-time secretary and then to Human Resource Manager on

or about December 4, 2011.

15.   On or about January 9, 2017, Williams was hired by SMILE and named as the Chief

Executive Officer of SMILE.

16.   Gabriel, prior to and after the hire of Williams, performed her duties without any

conflicts with management or any unpleasant incidents.

17.   From the day of his hire, Williams began to harass Gabriel due to her sex, and subject

Gabriel to a regular pattern of hostile work environment sexual harassment and quid pro quo

sexual harassment.

18.   Williams made it known to Gabriel that if Gabriel did not relent to his sexual overtures

there would be adverse employment consequences.

19.   The frequent comments included telling Gabriel that she "carr[ied] yourself well" for

her age, that her face was "symmetrically proportionate," and how he was "intrigued" by the

color of her eyes. Williams regularly complimented Gabriel on her hair, skin and face. The comments were unwanted and unreciprocated by Gabriel.

20.   Williams also began calling Gabriel into his office at least 5-6 times daily under the guise of work-related inquiries. Williams would hold Gabriel's hand for uncomfortable periods of time when receiving documents and continue with his flirtatious behavior. Again, this behavior was unwanted and unreciprocated by Gabriel.

21.   Williams also contacted Gabriel at home and on weekends under the guise of needing assistance with work-related matters.

22.   For instance, in February 2017, Williams contacted Gabriel at home and requested that she meet him at Chili's restaurant to discuss work matters. Gabriel reluctantly agreed. Williams discussed Gabriel's meager salary and his plan to promote Gabriel to the Executive Assistant position. Williams oddly inquired about the previous CEO, Royal Hill, and whether there had been any sexual relations between Gabriel and Royal Hill.  Gabriel immediately responded no. Then Williams placed his hand over Gabriel's hand for an uncomfortable period of time and stated, "I need loyal people Ms. Gabriel." Gabriel removed her hand from his grasp and promised to help the agency in any way she could.

23.   On April 14, 2017, Good Friday, Williams contacted Gabriel at home to profess his love for her. Williams stated, "I want you to know I will take care of you, if you take care of me."  Gabriel did not respond and attempted to end the phone call. Williams then informed Gabriel that "I don't want to put you in an awkward situation, but do you know who I am." Williams further stated, "you either on this train, and take care of me, or I mean changes will be made." He further commented and restated, as he had before, that "the board has already told me I should have made you reapply for your job. Geri Brown hates you and wants you gone."

24.   Williams also informed Gabriel that other SMILE employees had been recommended for pay increases except for her.  Williams then commented "so, I am telling you. I am how I am to say professing my love for you and letting you know I will take care of you. You can bank that."

25.   Gabriel did not agree to Williams's request prompting Williams to respond that Gabriel "didn't need to decide today, but a decision needed to be made."

26.   The next day, April 15, 2017, Williams again contacted Gabriel and requested that she meet him for breakfast. Gabriel reluctantly agreed. Williams continued his demand for "loyalty," plans moving forward and request that Gabriel consent to his demands.

27.   On April 19, 2017, Williams's behavior became even more inappropriate and aggressive. Williams contacted Gabriel in her office at SMILE and instructed her to go home immediately. Gabriel declined. Williams, refusing to take no for an answer, presented to her office and informed Gabriel's then supervisor that he needed Gabriel to run an errand. Gabriel then went to her home as requested. Williams soon thereafter arrived at Gabriel's home and manipulated Gabriel into providing sexual favors in exchange for promises of promotion, increased pay and job retention and Gabriel reluctantly relented to Williams's demands for sex, fearing for her job security, especially with financial pressures at home as a single mother of two.

28.   Upon completion of the sexual encounter on April 19, 2017, Williams reminded Gabriel of his demand for loyalty and instructed her to immediately return to work.

29.   After the encounter, Gabriel had an emotional breakdown. She immediately went to the bathroom when she returned to SMILE, locked the door and washed her entire body. She felt humiliated.

30.    On April 24, 2017, Williams again propositioned Gabriel for sex.  Williams then berated Gabriel for "bad sex" and reminded her of "loyalty." Gabriel felt demeaned and again humiliated.

31.    Again, on April 27, 2017, Williams summoned Gabriel to the conference room at SMILE and demanded sex. Williams again reminded Gabriel of "loyalty."

32.    Thereafter, from May 2017 until April 2018, Williams would either contact Gabriel by telephone, summon her to SMILE's office or request that she go home for sexual favors as if she was his property, and as if he controlled her.

33.    Again, on July 28, 2017, Williams summoned Gabriel to the conference room at SMILE and demanded oral sex. Upon completion of his demand, Williams again reminded Gabriel of "loyalty."

34.    In August 2017, Williams informed Gabriel to keep a "low profile" because her name had been included on the SMILE Chief Financial Officer's August 21, 2017 reduction-in-force recommendation report. Williams showed Gabriel the report with her name included in the list of laid off employees. Williams then reminded Gabriel of "loyalty" and commented "don't worry about that, big daddy got you."

35.    In September 2017, though Gabriel knew her job would be at risk, she informed Williams that she would no longer relent to his sexual demands and requested that he stop.

36.    Williams continued to persist with harassment and his request for sexual favors.

37.    When the final lay off recommendations were released, and Gabriel's name was not included, Williams boasted that "he really did have her back," as long as she remained "loyal."

38.     Thereafter, when Gabriel refused Williams's sexual advances he responded with a reminder of "loyalty" and another promise of a promotion and salary increase or reminder that he saved her from losing her job.

39.     In February 2018, after yet another promised promotion to a hybrid position with an annual salary of $34,000.00 did not materialize, Gabriel realized she was just being used and again informed Williams that she would no longer relent to Williams's sexual demands and requested that he leave her alone, as she had done on several occasions previously.  Gabriel also requested that Williams remit all of her unpaid overtime pay.

40.     Williams responded, after several verbal request and two written requests for Gabriel's unpaid overtime, that he was consulting with the SMILE attorney and a Board member regarding another promotion for Gabriel and her overtime pay.

41.     Gabriel never received her overtime pay, promotion or increased pay.

42.     On or about May 16, 2018, Gabriel reported her claims of harassment to two members of the SMILE Board of Directors, Geri Brown ("Brown") and Mary Batiste ("Batiste").

43.     In response to Gabriel's claim, Brown remarked "I had a feeling that bastard was up to something." She further stated, "He was using you baby." However, surprisingly, she then inappropriately and with a lack of sensitivity asked Gabriel "how you handle that big bastard. I know you had to be on top."  Gabriel did not respond.  Brown also told Gabriel not to beat herself up because she "didn't have a choice," and suggested that she protect herself implying Williams would come after her for the accusations.

44.     Batiste responded that "they," meaning SMILE, could not do anything without proof. Batiste then surprisingly suggested that Gabriel was "liable" and that she had a "choice."

45.    In light of the Brown and Batiste remarks, Gabriel felt alienated from and insufficiently protected or supported by SMILE.

46.    As a result, Gabriel retained legal counsel who on May 22, 2018 began communicating directly with SMILE's legal counsel on Gabriel's behalf and informed SMILE's legal counsel of the harassment and discrimination that Gabriel had experienced.

47.    Williams, informed by SMILE of Gabriel's complaint,  immediately contacted Gabriel and offered her an unnamed position with a pay increase to $34,000.00 annually retroactive to April 25, 2018 if she would agree to withdraw her complaint of sexual harassment.

48. Williams also offered Gabriel$10,000.00 to withdraw her complaint of sexual harassment.

49. The SMILE Board approved the promotion at the May 2018 Board meeting retroactive to April 25, 2018.

50. Gabriel declined William's $10,000.00 offer in exchange for the withdrawal of Gabriel's complaint of a hostile work environment sexual harassment and quid pro quo sexual harassment.

51.    In response to Gabriel securing legal counsel, SMILE purported to undertake an investigation of Gabriel's claim.

52.    Approximately three weeks after Plaintiff's initial complaint, on June 4, 2018, SMILE's legal counsel conducted an interview with Gabriel regarding the complaint of a hostile work environment sexual harassment and quid pro quo sexual harassment.

53.    Upon information and belief, SMILE never interviewed any other SMILE employees including Williams.

54.    Upon information and belief, SMILE never concluded the investigation despite Gabriel's legal counsel's several request for the investigative report and conclusions.

55.   On May 24, 2017 Williams was placed on FMLA leave.

56.   Gabriel was forced, however, to use all of her sick leave and vacation leave to accommodate her absence from work during this time.

57.   On or about June 7, 2018, SMILE employees discovered a "voodoo doll" with characteristics similar to Gabriel in Williams's desk and immediately forwarded a photograph of same to Gabriel.

58.   The "voodoo doll" further exacerbated the anxiety, stress and depression that Gabriel was experiencing as a result of the sexual harassment.  Gabriel recalled a previous reference by Williams to the "voodoo doll" in January 2018 which she dismissed at the time as merely a joke.

59.   Due to the severe emotional distress she had experienced the past twelve (12) months and the discovery of the "voodoo doll," Gabriel suffered extreme emotional distress, anxiety, depression, sleeplessness, and debilitating and unbearable panic attacks.  Gabriel began seeing a mental health professional who diagnosed her with anxiety, depression and post-traumatic stress disorder. Gabriel's mental health provider recommended that Gabriel not return to the SMILE building located on St. John Street for a period of time.

60.   Gabriel's attorney made SMILE's legal counsel aware of the recommendations of Gabriel's health care provider. Accordingly, SMILE was fully aware of Gabriel's request for leave and/or a reasonable accommodation due to her severe emotional distress.  Gabriel's legal counsel and SMILE's legal counsel communicated in this regard on at least six (6) occasions.

61.   However, SMILE refused to engage in the interactive process relative to a reasonable accommodation.  Instead, in June 22, 2018 correspondence, SMILE refused to accommodate Gabriel without engaging in the interactive process.  In addition, Defendant did not provide

Gabriel with a reasonable amount of time to remit medical documentation requested by SMILE's legal counsel on June 26, 2018.

62.  Instead, Gabriel received correspondence on June 29, 2018, three days after SMILE's legal counsel requested medical documentation and Gabriel's legal counsel agreed to provide same, terminating her employment with SMILE.

63.  In addition, in retaliation for the sexual harassment claim, ADA claim, and worker's compensation claim the promotion and salary increase awarded to Gabriel retroactive to April 25, 2018 and approved at the May 2018 SMILE Board meeting were rescinded by the SMILE Board at the June 25, 2018 Board meeting.

64.  SMILE also refused to file a worker's compensation claim as requested by Gabriel on June 27, 2018.

65.  Defendant SMILE further failed to inform Gabriel of her rights under the FMLA.

66.  Defendant SMILE's reason for terminating Gabriel is transparently pretextual. Prior to her termination, Gabriel's legal counsel communicated with SMILE's legal counsel continuously regarding Gabriel's absences from work due to the harassment and associated emotional distress. A reasonable accommodation under the ADA and worker's compensation claim were requested and refused by SMILE. Thus, Gabriel's termination is directly related to and in retaliation for her claims of quid pro quo sexual harassment, hostile work environment sexual harassment, worker's compensation claim, ADA claim and eligibility for leave under the FMLA in violation of both state and federal laws.

67.  The effects of the practices complained of in paragraphs 14-66 above have been to deprive Gabriel of equal employment opportunities and to otherwise adversely affect her status

as an employee, because of her sex and opposition to practices made unlawful under Title VII of
the Civil Rights Act of 1964, as amended.

68.    The unlawful employment practices complained of in paragraph 14-66 above were
intentional.

69.    The unlawful employment practices complained of in paragraph 14-66 were done with
malice or with reckless indifference to the federally protected rights of Gabriel.


<u>**CAUSES OF ACTION**</u>

**COUNT I:    HARASSMENT AND DISCRIMINATION ON THE BASIS OF SEX IN
                VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42
                U.S.C. § 2000e *ET SEQ*.**

70.     Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

71.    At all times relevant to this action, Defendants were an employer within the meaning of
Title VII, and Gabriel was an employee entitled to protection in her employment from
discrimination-based sex within the meaning of Title VII.

72.    But for Gabriel being a woman, and therefore a member of a protected class pursuant to
Title VII, she would not have been subject to discrimination based upon her sex.

73.    Gabriel was qualified to hold her position of employment with Defendants and had
satisfactorily performed the duties required by her position of employment with Defendants.

74.    Moreover, Gabriel was terminated from her employment for no legitimate, non-
discriminatory reason, as alleged above.

75.    Defendants knew or should have known of the unlawful acts and practices as alleged
above yet failed to act promptly to prevent or end the harassment and discrimination.

76.    As a proximate result of Defendants' unlawful acts and practices as alleged above, Gabriel has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for, *inter alia,* mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

77.    Defendants acted with malice and/or with reckless disregard for Gabriel's statutorily protected civil rights, and, as such, Defendants should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

**COUNT II:   DISCRIMINATION BASED UPON SEX IN VIOLATION OF LEDL**

78.    Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

79.    At all times relevant to this action, Defendants were an employer within the meaning of LEDL, and Gabriel was an employee entitled to protection in her employment from discrimination based on sex within the meaning of the LEDL.

80.    But for Gabriel being a woman, and therefore a member of a protected class pursuant to the LEDL, she would not have been subject to discrimination based upon her sex.

81.    Gabriel was qualified to hold her position of employment with Defendants and had satisfactorily performed the duties required by her position of employment with Defendants.

82.    Moreover, Gabriel was terminated from her employment for no legitimate, non-discriminatory reason, as alleged above.

83.    Defendants knew or should have known of the unlawful acts and practices as alleged above yet failed to act promptly to prevent or end the harassment and discrimination.

84.    As a proximate result of Defendants' unlawful acts and practices as alleged above, Gabriel has suffered and continues to suffer substantial losses, including loss of past and future

earnings and other employment benefits, and is entitled to monetary and compensatory damages for, *inter alia,* mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

85.   Defendants acted with malice and/or with reckless disregard for Gabriel's statutorily protected civil rights, and, as such, Defendants should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

## COUNT III: DISCRIMINATION UNDER THE AMERICANS WITH DISABILITY ACT

86.   Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

87.   At all times relevant to this action, Defendants have continuously had at least fifteen (15) employees, thereby qualifying Defendants as a "covered entity" under Section 101(2) and (5) of the ADA. 42 U.S.C. § 12111(2), (5).

88.   Gabriel is an individual with a disability as defined in 42 U.S.C. § 12102(2).

89.   At all times relevant to this action, Gabriel has been able to perform the essential functions and duties of her position with SMILE.

90.   When Gabriel submitted a request for a reasonable accommodation related to her mental illness, Defendant terminated Plaintiff.

91.   Defendants' decision to rescind terminate Gabriel due to the exercise of protected activity constitutes unlawful discrimination prohibited under 42 U.S.C. § 12112.

92.   Gabriel experienced lost wages, emotional pain and suffering, stress, anxiety, loss of enjoyment of life, humiliation, inconvenience, and other monetary and dignitary harms as a result of Defendants' actions.

**COUNT IV: RETALIATION UNDER THE AMERICANS WITH DISABILITY ACT**

93.   Gabriel has been retaliated against in response to her participation in proceedings under the LEDL as well as to her opposition of Defendant's practices, which violate the LEDL.

94.   Defendant engaged in conduct materially adverse to a reasonable employee and took adverse employment actions against Gabriel as heretofore alleged.

95.   Gabriel request that she be awarded all available relief including, but not limited to, (1) a declaratory judgment that the acts and practices of the Defendant complained of herein are in violations of the laws of the state of Louisiana; (ii) injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, and reinstatement or front pay in lieu thereof; (iii) actual, compensatory and punitive damages; (iv) attorney's fees, expenses, interest, and costs; and (v) all other and further relief as to this Court appears necessary and proper, including but not limited to, equitable relief to compensate Plaintiff.

**COUNT V:   DISCRIMINATION BASED UPON DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE IN VIOLATION OF LEDL**

96.   Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

97.    Gabriel's major depressive disorder, post-traumatic stress disorder, severe anxiety and complications associated therewith constitute a disability under the LEDL.

98.    Gabriel submitted her request for accommodation in writing to Defendant SMILE's legal counsel.

99.    Gabriel was able to perform the essential functions of her position with a reasonable accommodation. Defendant SMILE failed to engage in the interactive process and refused to discuss a reasonable accommodation for Gabriel's depression.

100.   Defendant discriminated against Gabriel on the basis of her disability, refused to honor its obligation to accommodate the same, and then terminated her employment.

101.   Gabriel request that she be awarded all available relief including, but not limited to, (i) a declaratory judgment that the acts and practices of the Defendant complained of herein are in violations of the laws of the state of Louisiana; (ii) injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, and reinstatement or front pay in lieu thereof; (iii) actual, compensatory and punitive damages; (iv) attorney's fees, expenses, interest, and costs; and (v) all other and further relief as to this Court appears necessary and proper, including but not limited to, equitable relief to compensate Gabriel.

## COUNT VI: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT UNDER TITLE VII

102.    Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

103.     Pursuant to Title VII, it is an unlawful employment practice for an employer to create or condone a work environment permeated with discriminatory intimidation, ridicule, insult and actions that were sufficiently severe and pervasive enough to alter the conditions of her work environment.

104.     As a female employee, Gabriel is a member of a protected class.

105.     Gabriel was subjected to unwelcome sexual harassment, based on her sex.

106.     Moreover, Gabriel was terminated from her employment for no legitimate, non-discriminatory reason, as alleged above.

107.     Based upon Defendants' discriminatory and harassing acts and practices as alleged above, Gabriel was subjected to a workplace which was permeated with discriminatory intimidation, ridicule, insult and actions that were sufficiently severe and pervasive enough to alter the conditions of her work environment.

108.     Defendants condoned the discriminatory acts and practices as alleged above, and as a result, the Gabriel has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employee benefits, and has suffered other monetary and compensatory damages, for *inter alia*, mental anguish, emotional distress, and humiliation.

109.     Defendants acted with malice and/or with reckless disregard for Gabriel's statutorily protected civil rights, and, as such, Defendant should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

## COUNT VII: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT UNDER LEDL

110.     Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

111.     Pursuant to LSA-R.S. § 23:301 *et seq.*, it is an unlawful employment practice for an employer to create or condone a discriminatory work environment with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's sex.

112.     As a female employee, Gabriel is a member of a protected class.

113.     Gabriel was subjected to unwelcome sexual harassment, based on her sex.

114.    Moreover, Gabriel was terminated from her employment for no legitimate, non-discriminatory reason, as alleged above.

115.    Based upon Defendants' discriminatory and harassing acts and practices as alleged above, Gabriel was subjected to a workplace which was permeated with discriminatory intimidation, ridicule, insult and actions that were sufficiently severe and pervasive enough to alter the conditions of her work environment.

116.    Defendants condoned the discriminatory acts and practices as alleged above, and as a result, the Gabriel has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employee benefits, and has suffered other monetary and compensatory damages, for *inter alia*, mental anguish, emotional distress, and humiliation.

117.    Defendant acted with malice and/or with reckless disregard for Gabriel's statutorily protected civil rights, and, as such, Defendant should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

**COUNT VIII: QUID PRO QUO SEXUAL HARASSMENT UNDER TITLE VII**

118.    Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

119.    Defendant Williams made unwanted sexual advances to Gabriel and engaged in other unwanted verbal or physical conduct of a sexual nature.

120.    At the time of the alleged conduct, Defendant Williams was the Chief Executive Officer at SMILE and Gabriel's immediate supervisor.

121.    Gabriel's job benefits were conditioned, by words and conduct of Williams, on Gabriel's acceptance of Defendant Williams's sexual advances and/or conduct, and employment decisions affecting Gabriel were made based on her acceptance or rejection of the alleged conduct.

122.    Gabriel was harmed by the alleged conduct, and the alleged conduct of Defendant Williams caused the harm.

123.    Defendant SMILE condoned the discriminatory acts and practices as alleged above, and as a result, the Gabriel has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employee benefit, and has suffered other monetary and compensatory damages, for *inter alia*, mental anguish, emotional distress, and humiliation.

124.    Defendant acted intentionally and with malice and reckless indifference to Gabriel's statutory rights and are liable to Gabriel for compensatory damages.

## COUNT IX: RETALIATION IN VIOLATION OF THE TITLE VII, 42 U.S.C. § 2000e *ET SEQ*., AGAINST DEFENDANT

125.    Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

126.    At all times relevant to this action, Defendants were an employer within the meaning of Title VII and Gabriel was an employee entitled to protection in her employment from discrimination based upon sex or disability.

127.    Pursuant to the acts and practices of Defendant as alleged above, Gabriel issued several complaints to SMILE of the discrimination based on sex and disability that she was forced to endure, and thus engaged in protected activity pursuant to Title VII.

128.    Defendant SMILE knew or should have known of the unlawful acts and practices as alleged above yet failed to act promptly to prevent or end the harassment and discrimination.

129.    Instead of taking steps to ensure a discrimination-free workplace, Defendant condoned and reinforced the unlawful acts and practices alleged and retaliated against Gabriel by failing to promptly implement corrective measures and/or failing to offer an appropriate resolution to the

discrimination that she suffered and the hostile work environment that was created thereby and terminated Gabriel's employment.

130.   As a proximate result of Defendant's unlawful acts and practices as alleged above, Gabriel has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for, *inter alia,* mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

131.   Defendant acted with malice and/or with reckless disregard for Gabriel's statutorily protected civil rights, and, as such, Defendant should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

**COUNT X: RETALIATION IN VIOLATION OF THE LEDL AGAINST PLAINTIFF**

132.   Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

133.   Gabriel complained about the treatment she was receiving and the failure of Defendant to accommodate her disability.

134.   Gabriel has been retaliated against in response to her participation in proceedings under the LEDL as well as to her opposition of Defendant's practices, which violate the LEDL.

135.   Defendant engaged in conduct materially adverse to a reasonable employee and took adverse employment actions against Gabriel as heretofore alleged.

136.   Gabriel request that she be awarded all available relief including, but not limited to, (1) a declaratory judgment that the acts and practices of the Defendant complained of herein are in violations of the laws of the state of Louisiana; (ii) injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, and reinstatement or front pay in lieu thereof; (iii) actual, compensatory and punitive

damages; (iv) attorney's fees, expenses, interest, and costs; and (v) all other and further relief as to this Court appears necessary and proper, including but not limited to, equitable relief to compensate Plaintiff.

## COUNT XI: INTERFERENCE WITH PLAINTIFF'S SUBSTANTIVE RIGHTS UNDER THE FMLA

137.    Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

138.    Gabriel was employed by Defendant for more than 6 years.

139.    Gabriel had worked for Defendant more than 1250 hours within the preceding twelve-month period.

140.    Gabriel has a serious health condition protected under the FMLA, and Gabriel was entitled to leave under the FMLA.

141.    Defendant's actions constitute retaliation of Gabriel's exercise of or the attempt to exercise her substantive statutory rights as an eligible employee under the FMLA.

142.    By reason of Defendants' retaliation, Gabriel suffered harm and injury, damage to her good reputation extreme mental anguish, painful embarrassment among her friends and co-workers, disruption of her personal life, financial injury, lost benefits, lost wages, and loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XII: RETALIATION UNDER THE FMLA

143.    Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

144.    Defendant retaliated against Gabriel for attempting to take FMLA-protected leave.

145.    Defendant's actions of interference and ultimately termination constitute retaliation and/or discrimination under the FMLA.

146.    Gabriel has incurred actual and consequential damages as a result of Defendant's unlawful retaliation.

147.    Gabriel request that she be granted all available relief including, but not limited to, an award of lost wages and employment benefits, liquidated damages, equitable relief as the Court may deem appropriate, and all other and further relief as to the Court appears necessary and proper, including, but not limited to, the costs of this action, attorney fees, and pre-judgment interest.

## COUNT XIII: RETALIATION UNDER THE LOUISIANA WOKERS COMPENSATION LAW

148.    Gabriel re-alleges the preceding paragraphs as if set forth fully herein.

149.    Gabriel suffered an injury that was work related.

150.    Gabriel gave "NOTICE" to Defendants of her intent to pursue a workers compensation claim against Defendants.

151.     Gabriel has terminated soon after she gave notice of her intent to pursue a workers compensation claim against Defendants.

152.    Defendants engaged in conduct materially adverse and in retaliation for Gabriel's intent to pursue a workers compensation claim as heretofore alleged.

153.    Gabriel request that she be awarded all available relief including, but not limited to, (1) a declaratory judgment that the acts and practices of the Defendant complained of herein are in violations of the laws of the state of Louisiana; (ii) injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, and reinstatement or front pay in lieu thereof; (iii) actual, compensatory and punitive

damages; (iv) attorney's fees, expenses, interest, and costs; and (v) all other and further relief as to this Court appears necessary and proper, including but not limited to, equitable relief to compensate Plaintiff.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff Jaime N. Gabriel demands a trial by jury and prays this Court for the following relief:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, their agents, employees, attorneys and those acting in concert with them from engaging each of the unlawful practices, policies, customs and usages set forth herein, and from continuing any and all the practices shown to be in violation of the applicable law;

B. Enter a judgment in Ms. Gabriel' favor and against Defendant for harassment on the basis of sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*;

C. Enter a judgment in Ms. Gabriel' favor and against Defendant for harassment on the basis of sex and retaliation in violation of LSA-R.S. § 23:301 *et seq.*;

D. Award Ms. Gabriel compensatory damages for pain and suffering, damage to career, and loss of enjoyment of life, that she has experienced as a result of Defendant's unlawful conduct in an amount to be determined at trial;

E. Award Ms. Gabriel punitive damages in an amount to be determined at trial;

F.  Award Ms. Gabriel back pay, front pay, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to make her whole for the unlawful actions taken against her.

G.  Enter an order enjoining Defendant, or each of them, to do all that is necessary in law or in equity to make Ms. Gabriel whole for the damages and injuries alleged herein;

H.  Award Ms. Gabriel the costs and disbursements of this action, including reasonable attorney's fees in accordance with Title VII and all expert witness fees;

I.  For lost wages, salary, employment benefits, or other compensation denied or lost to Gabriel by reason of Defendants' FMLA violations;

J.  For liquidated damages;

K.  For pre-and post-judgment interest;

L.  For lost monies and damages pertaining to out-of-pocket expenses;

M.  For injunctive and equitable relief as provided by law;

N.  Award Ms. Gabriel all other relief as the Court deems necessary and proper in the public interest.

**DEMAND FOR JURY TRIAL**

Ms. Gabriel demands a trial by jury on all so triable in this action.

BOWERS LAW FIRM, LLC

*s/ Monica V. Bowers*
MONICA V. BOWERS (#28317)
vbowers@bowerslawfirmla.com
1200 Camellia Blvd., Suite 205
Lafayette, LA 70508
Ph: (337)406-9615

Fax: (337) 406-9615
Counsel for Plaintiff, Jaime N. Gabriel

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 23, January, 2019, I electronically filed the

foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a

notice of electronic filing to all counsel of record.

*s/ Monica V. Bowers*_____